Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 16 April 1999, all parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. On 16 April 1999, EBI Companies was the insurance carrier for defendant-employer. Defendant-employer on 16 April 1999 employed the requisite number of employees to be bound under the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 16 April 1999.
3. As a result of the accident, plaintiff was totally disabled and entitled to temporary total disability benefits at least through 18 May 1999. Thereafter, it is defendants' position that beginning 19 May 1999, plaintiff was released to return to work with no permanent partial disability. Work was available. Plaintiff contends that her temporary total disability continued beyond 18 May 1999, and continues to this date, that she has not reached maximum medical improvement, and that she is in need of additional medical care.
4. Plaintiff was paid for the entire day of the injury.
5. The actual average weekly wage of plaintiff at the time of the injury, including overtime and all allowances, was $310.00.
In addition, the documents attached to the Pre-Trial Agreement were stipulated into evidence and a packet of additional medical records and reports were subsequently submitted by stipulation.
The Pre-Trial Agreement dated 10 July 2000, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 30 years old at the time of the hearing before the Deputy Commissioner, began working for defendant retirement community as a Certified Nursing Assistant II on 1 March 1999. She was also enrolled at Forsyth Tech at that time and was taking courses towards an LPN certification. On 16 April 1999, she sustained a compensable injury at work when she hurt her back while lifting and turning patients. On 17 April 1999, she was evaluated at the emergency room where she was given medication and was advised to stay out of work until 20 April 1999. On 19 April 1999, plaintiff went to Dr. Gaylen Johnson at Greensboro Occupational Medicine with complaints of persistent low back pain. Dr. Johnson treated plaintiff with medication and limited her activities. Although Dr. Johnson tried on several occasions to send plaintiff back to light duty work, plaintiff insisted that she was not able to perform even limited work. Due to her continuing complaints, Dr. Johnson subsequently referred her to Dr. Frank J. Rowan, an orthopedic surgeon.
2. Dr. Rowan evaluated plaintiff on 5 May 1999. Dr. Rowan was of the impression that plaintiff's back pain was mechanical in nature, but he ordered an MRI because her symptoms had not responded to conservative treatment. Before the test was performed, plaintiff returned to his office on two occasions with additional complaints. At plaintiff's second examination with Dr. Rowan on 11 May 1999, she left without explanation before the evaluation was complete. The MRI was subsequently performed and was within normal limits. Consequently, on 18 May Dr. Rowan reduced her work restrictions. Plaintiff next saw him on 1 June 1999. At that time plaintiff informed Dr. Rowan that she had not returned to work and that she did not think she could do light duty. Dr. Rowan prescribed a TENS unit for plaintiff on that date at her request and continued to recommend that she return to work.
7. At her next appointment on 2 July 1999, plaintiff advised Dr. Rowan that the TENS unit had helped some but that she was not interested in the light-duty work available but would prefer to look for different work. Because she appeared to be poorly motivated to return to work and because there did not appear to be an objective problem which explained her continuing complaints, Dr. Rowan ordered a functional capacity evaluation which was performed on 28 July 1999. The test indicated that plaintiff could perform medium level work with occasional lifting of up to 50 pounds below shoulder level and 25 pounds overhead. Consequently, on 4 August 1999, Dr. Rowan advised plaintiff that she had reached maximum medical improvement with no permanent partial impairment.
8. On 17 July 1999, plaintiff went to Dr. Joseph D. Stern, a neurosurgeon, for a second opinion. Dr. Stern found that she had some paraspinous discomfort and spasm in her low back, but found no evidence of radiculopathy on his examination. He advised plaintiff that she would likely improve with time and conservative treatment. Dr. Stern examined her a second time on 22 December 1999, and again found no evidence of a problem which would warrant surgery. Plaintiff's examination on that date was fairly unremarkable. Nevertheless, plaintiff has claimed to be totally disabled up to the date of hearing before the Deputy Commissioner.
9. Defendants admitted liability for the injury in question pursuant to a Form 60. Defendants paid compensation to plaintiff for temporary disability for the periods she was out of work until 18 May 1999. Plaintiff seeks compensation for disability after 18 May 1999.
10. As of 19 May 1999, plaintiff was capable of performing light work which did not involve lifting more than 10 pounds, squatting or stooping, and which allowed her to change positions frequently and to sit approximately 25% of the time. Defendant-employer had recently opened a new wing for assisted living patients who did not require a high level of care. Plaintiff was offered light duty work where she would work in the assisted living wing as much as possible. Her duties would include making rounds to listen at doors to make sure the residents were well, to take vital signs as necessary and to provide water if requested. Should a resident need assistance requiring lifting, plaintiff was to call for assistance with her two-way radio. She would also have to do some paper work and possibly fold some laundry. The duties were within plaintiff's restrictions and her capabilities. However, plaintiff refused to contact her employer or to return to work.
11. Although plaintiff continued to complain of disabling pain, her condition actually improved and by 28 July 1999, she was capable of lifting up to 50 pounds. Light duty work remained available to her but she failed to follow-up with her employer. Plaintiff's failure to report for work during this time was unjustified. Plaintiff subsequently made no effort to return to work with defendant-employer or any other employer until the date of hearing before the Deputy Commissioner on 10 July 2000, even though she had minimal restrictions and was capable of working and earning wages.
12 Plaintiff reached maximum medical improvement with respect to this injury on 4 August 1999, and sustained no permanent partial disability to her back. Plaintiff has failed to show that she suffered any permanent loss of earning capacity as a result of this injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In that plaintiff refused without justification to accept light work which was suitable to her capacity and which was offered by defendant-employer after 18 May 1999, and in that plaintiff has failed to meet her burden of proving continuing disability, she is not entitled to compensation for temporary total disability after that date. N.C. Gen. Stat. §§ 97-32; 97-29.
2. As a result of this injury by accident, plaintiff sustained no permanent partial impairment which would give rise to compensation under N.C. Gen. Stat. § 97-31.
3. Plaintiff is not entitled to compensation for permanent partial disability for wage loss in that she did not prove that she suffered any loss of earning capacity as a result of this injury by accident. N.C. Gen. Stat. § 97-30; Gupton v. Builders Transport, 320 N.C. 38,357 S.E.2d 674 (1987); Russell v. Lowe's Products Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993); Sims v. Charmes-Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
4. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Except for payment of any outstanding medical expenses, plaintiff's claim for further compensation under the Workers' Compensation Act is DENIED.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. Defendants shall pay the costs.
This the ___ day of December, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER